## Ash's Appeal.

! 80 ‥497
‥177 102‥

1. An unmarried woman conveyed all her estate in trust to invest it and pay the income to her during life for her separate use whether covert or sole, so as not to be liable to the control or debts of any husband she might have, nor to "any charge, &c., or anticipation by her," &c.; in case she should marry and survive her husband, the trust for her separate use should continue whilst discovert and during any future coverture; after her death, to such persons and estates as she by will might appoint, and in default of appointment for the use of her children or child living at her death and the issue of any who might be dead, "their heirs, executors and administrators as tenants-in-common, such issue to take the shares which the parents would have taken;" any husband who might survive her to take a child's share; if she should leave no issue the estate to pass to her right heirs and next of kin according to the intestate laws. *Held*, to be an active trust.

2. The trust was not for coverture, but to bind the hands of the *cestui que trust* and take the control of her estate from her for life, to secure it against loss or improvidence.

3. This trust being for life with remainder. to living children and not to heirs general or issue, the life estate and remainders did not coalesce.

4. Ashhurst's Appeal, 27 P. F. Smith 464; Earp's Appeal, 25 P. F. Smith 119, similar trusts.

February 4th 1876. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ.

Appeal from the Court of Common Pleas of *Philadelphia:* In Equity: Of January Term 1874, No. 272.

The proceeding in this case was to declare that a trust under a deed from Ellen M. Harland to Delphina Bowen and Joseph M. Cowell had failed.

The deed was dated April 11th 1856. It recited that the grantor was "entitled to a considerable estate, principally consisting of bonds and mortgages, at present in the possession and name of her late guardian, and which, for the preservation of the same,.

30 P. F. Smith—32

and her secure enjoyment of the interest thereof, she is desirous of settling for her sole and separate use, and upon the trusts hereinafter mentioned." It then granted all her estate, whether standing in the name of her late guardian or in any other name whatsoever, to the grantees; in trust to receive it from such persons as may have and hold it during her life for her sole and separate use and keep it invested, &c., and to pay the income to her during her life " for her own sole and separate use whether covert or sole, but in such way and manner that the same shall not be answerable for, nor in any manner liable to, the control or to the debts, contracts or engagements of any husband or husbands, she, the said Ellen Margaretta Harland may hereafter have or take, nor be liable to any charge, encumbrance, assignment or anticipation of her, the said Ellen Margaretta Harland, whether sole or covert, nor be applied to any other purpose or object than the sole and separate use of the said Ellen Margaretta Harland, it being expressly provided, in case the said Ellen Margaretta Harland shall intermarry with any husband and survive him, that the trust hereby created for her sole and separate use shall not thereby determine, but shall continue during such time as she may remain sole and discovert, and during any future coverture of her, the said Ellen Margaretta Harland, in the same way and manner as if such discoverture and survivorship had never taken place; and from and immediately after the death of the said Ellen Margaretta Harland, * * * to and for such parties and persons, and for such uses, intents, purposes and estates therein as she, the said Ellen Margaretta Harland, whether covert or single at the time of her death, may by any last will and testament, or instrument in the nature thereof, direct, provide, limit and appoint. And in default of such direction or appointment, or so far as such direction or appointment may not extend, or may be incapable of taking effect, * * * for the use of her children (or child, if only one), who shall be living at the time of her death, and the issue, if any, of any of her children (or child, if only one), who may be then deceased, their heirs, executors and administrators, as tenants-in-common, such issue of' deceased children, if any, to take the shares which their parents would have respectively taken, if living, and any husband whom the said Ellen Margaretta Harland may leave surviving her to be entitled to a child's share, in common with any such child or children, or issue of deceased child as aforesaid. And if there should be no issue of the said Ellen Margaretta Harland living at the time of her death, then from and after the death of the said Ellen Margaretta Harland as to the real estate to and for the use of her right heirs for ever, and as to the personal estate to and for the use of such person or persons as would by the laws of Pennsylvania have been entitled thereto, if she had died unmarried, intestate and without issue." * * *

[Ash's Appeal.]

Miss Harland on the 2d of April 1857, married Thomas R. Ash, by whom at the time of the filing of the bill in this case, she had had six children, three only of whom were then living.

On the 19th of March 1873, she and her husband filed a bill against Delphina Bowen and Joseph M. Cowell, trustees in the trust deed; it set out:—

1. The making of the trust deed.

2. At its date she had just reached full age; she was not then contemplating marriage and had no acquaintance with her husband, the other plaintiff.

3. The trust was created "for the preservation of her estate and her secure enjoyment of the interest, and she had no other idea in making the trust than to place her business in safe hands, and to provide against the misconduct or ·misfortune of any and every husband she might eventually have.

4–7. The several clauses in the deed were made to carry out this intent.

8. The trustees accepted and were exercising the trust.

10, 11. Averred that the trusts were inoperative and Mrs. Ash was entitled to have an absolute transfer of the whole estate; but the trustees declined to transfer, except under the order of the court.

12. The estate was in the hands of the trustees and consisted wholly of personal property.

The prayers were for an account and transfer of the whole property to Mrs. Ash absolutely.

The defendants by their answer admitted all the allegations of the bill and submitted themselves to the direction of the court.

The Court of Common Pleas dismissed the bill, Paxson, J., who delivered the opinion, saying:—

* * * "The bill avers, and the answer admits, that at the time of the execution of the deed of trust, the said Ellen was unmarried, was not in contemplation of any particular marriage, and did not know Thomas Reeves Ash, with whom she afterwards intermarried.

"It was said in Wells v. McCall, 14 P. F. Smith 215, that the creation of a trust constitutes the evidence of the fact of marriage being in the contemplation of the donor or devisor, and when this is followed within a reasonable time by consummation of the marriage, it concludes the proof. Where, as here, the settlement was made by the party herself, followed by her marriage within a year, the evidence has almost the force of an estoppel.

"We are asked to strike down this trust upon the mere statement of Mrs. Ash, that she was not in contemplation of this particular marriage when the deed was executed. It is true, the trustees, in their answer, admit this with the other allegations of the bill. I do not, however, regard their admissions. They are

not defending this case.  They allowed judgment to go against them by default, and come in only because required to do so by the court.  They wholly neglect to call for the proof of anything. And this, notwithstanding the fact that the said Ellen is now covert, the contingency contemplated by the trust, and the peril which she sought to protect her estate against.

" If the case were doubtful, I would dismiss the bill *pro forma*, and thus compel the plaintiff to obtain the decision of the Supreme Court.  But I do not so regard it.  Aside from the question above stated, Mrs. Ash has lost the control of her property by engrafting upon the trust a provision which limits her enjoyment of the property to a life estate, with remainder over, upon failure to appoint, to her children and husband.  The effect of this is to break the course of descent, and the remaindermen take as purchasers by description, and not as heirs.  The rule laid down is that, when an estate for life only is given, followed by a general power of appointment, and on failure to appoint, to children or to special heirs, the power to appoint will not enlarge the estate of the *cestui que trust* to a fee, and on a failure to appoint, the children or special donees in remainder, take by purchase from the donor, and not by way of limitation as heirs to the *cestui que trust :* Dodson *v.* Ball, 10 P. F. Smith 492.  This is not a mere separate use trust.  It is a special, active trust, and must be kept alive to support the remainders."

The plaintiffs appealed to the Supreme Court, and assigned for error the decree dismissing the bill.

*S. D. Page*, for appellants.—A special trust for coverture cannot be upheld in Pennsylvania, unless the coverture provided against be " in the immediate contemplation " of the testator or settlor : Wells *v.* McCall, 14 P. F. Smith 214.  If the particular husband was not, in the view and contemplation of the settlor, at the time the settlement took effect, the special trust for that coverture falls : Ogden's Appeal, 20 P. F. Smith 501 ; Yarnall's Appeal, Id. 335 ; McBride *v.* Smyth, 4 Id. 250 ; Tucker's Appeal, 25 Id. 354 ; Culbertson's Appeal, 26 Id. 145.  The duties, however active, imposed upon the trustees in a special trust for coverture, do not sustain the trust, if the purpose for which those duties were imposed or created fails, as in the events already considered.  Such a trust falls, not because it is not an active one, but because it is special : Koenig's Appeal, 7 P. F. Smith 352 ; Megargee *v.* Naglee, 14 Id. 216 ; Dodson *v.* Ball, 10 Id. 497 ; Freyvogle *v.* Hughes, 6 Id. 228.  When there is reserved to the first taker a power of appointment, by will, and the limitations over on a failure to appoint are to such as would take under the intestate laws, the life estate first given is unquestionably enlarged to a fee, and that, in spite of " words of distributive modification, with

[Ash's Appeal.]

words of limitation added," when as by the rules of descent: Physick's Appeal, 14 Wright 128; Russell's Appeal, 25 P. F. Smith 269; Ralston v. Waln, 8 Wright 279; Pott's Appeal, 6 Casey 168; Co. Litt. 22 b; Haldeman v. Haldeman, 4 Wright 29.

*C. W. McKeehan*, for appellees, cited Earp's Appeal, 25 P. F. Smith 269; Ashhurst's Appeal, 27 Id. 469.

Chief Justice AGNEW delivered the opinion of the court, February 14th 1876.

This is a case of an active trust for the natural life of Ellen M. Harland, now Mrs. Ash. The *corpus* of her estate is, by her deed, vested in the trustees who were to take possession, receive, hold, invest in their own names, and control the estate, to enable them to carry out the trusts declared, the chief one of which is, to hold the estate for her natural life, and to pay over to her, whether covert or sole, the net interest, income and dividends thereof, and in such way that the estate should not be answerable for, or liable to, any charge, encumbrance, assignment, or anticipation by her, whether sole or covert, and that the trust should continue, whether sole or covert, and should not fall at the death of any future husband, with remainder to the use of her living *child or children, as tenants-in-common.* The duties are clearly active, and essential to support the trust, and the trust is similar to that in Earp's Appeal, 25 P. F. Smith 269, and Ashhurst's Appeal, 27 Id. 464. It is not a trust for coverture merely, but one created to bind the hands of Ellen M. Harland herself, and take the control of her estate out of her own hands for life, in order to secure it against loss or improvidence. A trust for an estate in fee or absolutely for *coverture merely*, may fail, or may not take effect at all. But in this case the trust is clearly for life with remainder to living children in equal shares, and not to the heirs general or issue of Ellen M. Harland. The life estate and remainders do not coalesce. The trust, therefore, cannot be declared to have failed.

Decree affirmed with costs and appeal dismissed.