# W. W. Patrick, doing business as R. Patrick & Company, *v.* Henrietta C. Smith.   C. F. Bingaman, Appellant.

*Trusts and trustees—Irrevocable settlement, by grantor on self, precludes any assignment to special creditor.*

A settlor having conveyed, by irrevocable deed of trust, her estate to trustees to pay income to herself for life and the corpus as she might by will appoint, cannot convey her estate to any one, even a creditor; the right of any pursuing creditor must rest solely upon the grasp of her estate given him by law : he takes no preferred standing by virtue of any assignment by the settlor.

*Trusts and trustees—Settlor as beneficiary—Rights of creditors not affected.*

When a settlor by trust deed seeks to create a trust in his own property for his own use, to the exclusion of creditors, under the statute of Elizabeth against fraudulent conveyances, it follows that while a man may exclude the creditors of another whom he makes his beneficiary, he cannot exclude his own creditors from recourse to his estate, legal or equitable; though he may settle his estate beyond his own reach or control by conveying to a trustee, he cannot by such a device place it beyond the reach of his creditors.

A fraudulent conveyance is no conveyance as against the interest intended to be defrauded; it is the same as if no such deed had been executed; and these principles apply to a trust in which the settlor makes himself the beneficiary.

*Spendthrift trust—Grantor as beneficiary.*

There is no case in Pennsylvania which goes to the extent of recognizing a spendthrift trust, in which the grantor is himself the sole beneficiary for life, with power to dispose of the trust property at death, yet neither the income nor the corpus of the estate is subject to his debts.

*Subrogation—Recourse to two funds.*

On the principle of subrogation when one creditor has recourse to two funds, and another to but one, the first shall be paid from the fund to which the other has no recourse, that the latter may be paid from the only fund within his reach.

*Attorney at law has no lien at law on a fund created by his services.*

There is no warrant for the proposition that at law an attorney's claim for services, for a sum not judicially ascertained nor assented to by other claimants, is a lien upon the fund attached as against such claimants.

However desirable it may be to allow claims of counsel for services out of funds which those services secured, it cannot be done in the absence of legislation permitting it.   This is essentially true where the fund is impressed with a trust in remainder.

Argued April 6, 1896. Appeal, No. 45, April T., 1896, by C. F. Bingaman, from decree in distribution of C. P. No. 1, Allegheny Co., March T., 1890, No. 30. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, and SMITH, JJ. Reversed.

Exceptions to auditor's report and distribution thereon as modified by the court.

The facts are stated by the Superior Court as follows:

By deed dated July 23, 1879, Henrietta Catherwood conveyed all her property to the Philadelphia Trust, Safe Deposit and Insurance Company, in trust to pay her the income during her life; reserving to herself power to provide from the income for a surviving husband, to appoint by will among her children, and a general power of appointment should she die without issue; in default of appointment the trust estate to be conveyed to the use of her children and the issue of deceased children, or, should she die without issue, to be held in trust for the surviving husband for life, with remainder to those entitled to her estate under the intestate laws; and the estate, principal and income, to be "absolutely free from and not subject or liable to the debts, control or engagements of any husband she may have or marry, or to her own debts, control or engagements." Instead of a provision for revocation by the settlor, the deed contained the following clause: "This deed, indenture or conveyance to be absolutely irrevocable in any event whatever, the question of inserting a power of revocation having been submitted to and carefully considered by the party of the first part, and deliberately determined to be excluded."

In the common pleas of Allegheny county, to No. 30, March term, 1890, an action of assumpsit on a promissory note was brought by R. Patrick & Co. against the settlor,—then by marriage Henrietta C. Smith,—and judgment taken against her. This judgment was transferred to the common pleas of Philadelphia county, and in 1891 an attachment in execution was issued from that court, in which the Philadelphia Trust, Safe Deposit and Insurance Co. was made garnishee. While this was pending the original judgment in Allegheny county was opened; and February 9, 1894, the plaintiffs obtained a verdict

for $1,314.22. June 19, 1894, the judgment entered on this verdict was assigned to George D. Riddle and Lazear & Orr. The next day Mrs. Smith entered an appeal to the Supreme Court. The proceedings on the attachment in the common pleas of Philadelphia, which meantime had been suspended, were resumed, and October 1, 1894, judgment was entered against the garnishee for $1,424.23 ; $140.03 of this sum being income and the residue principal of the trust estate. The amount of this judgment was thereupon paid to Riddle by the garnishee.

January 7, 1895, the judgment of Patrick & Co. against Mrs. Smith in the common pleas of Allegheny county was reversed by the Supreme Court (Patrick & Co. v. Smith, 165 Pa. 526). In December, 1894, apparently in anticipation of such a result, C. F. Bingaman, who held two judgments against Mrs. Smith in the common pleas of Allegheny county, issued attachments in execution thereon, in which Riddle, who still held the money paid him by the Trust Company, was made garnishee,—the first writ, No. 745 January term 1895, being served December 22, and the second writ, No. 750 January term 1895, being served December 26 ; and December 24 Mrs. Smith assigned to James R. Macfarlane and J. B. Carson "all monies due and to become due me in the above case (No. 30 March term 1890) by reversal of the judgment by the Supreme Court ; the said judgment assigned by Patrick & Co. to George D. Riddle and Lazear & Orr having been collected by them." Notice of this assignment was given to Riddle and Lazear & Orr December 26, before service of Bingaman's second attachment. January 14, 1895, Mrs. Smith gave to " James R. Macfarlane, Trustee," a judgment for $1,500. At the same time a written agreement was made between Macfarlane, as trustee and individually, and Mrs. Smith, reciting that this judgment was given " for the same matter " as the assignment of December 24 and stipulating for the payment to Macfarlane, " for fees and expenses," of $400, should collection be made without contest with other creditors, of $450 in the event of such contest, and of the residue to Carson. On the same day, an attachment in execution, No. 34½ April term 1895, was issued on this judgment and served on Riddle as garnishee.

June 21, 1895, by consent of all the parties, Riddle paid into

court the amount he had received from the Trust Co., on a petition setting forth the proceedings and praying for a determination by the court of the rights of the claimants. On the hearing before an auditor, it appeared that a rule was pending to strike off the judgment on which Bingaman's first attachment was issued, and by agreement of counsel the amount involved was reserved to await the disposition of this rule.

In the distribution of the residue, the auditor held the assignment by Mrs. Smith inoperative, under the deed of trust, except as to the income, and awarded this portion of the fund to the assignee Carson. Of the principal remaining, he distributed $450 to Macfarlane, and the residue to Bingaman on his second attachment. The court below confirmed the auditor's report, except as to the distribution of the residue to Bingaman, and awarded this to Carson.

*Errors assigned* were : (1) In sustaining the following portion of the second exception filed to the auditor's report, to wit : " The auditor erred in his conclusions as to the legal effect of the assignment. The trustee is fully protected upon the payment of the money to George D. Riddle. . . . The money attached and assigned in the hands of George D. Riddle was so much money of Henrietta C. Smith for distribution, subject to the attachments and assignment, no matter from what source it came, and it was error for the auditor to treat the same as trust funds. It was the money of Henrietta C. Smith, with power to assign the same, and the said assignment should have been sustained as to the whole fund." (2) In awarding to J. B. Carson the item awarded by the auditor to C. F. Bingaman on execution attachment at No. 750, January Term, 1895, of the court of common pleas, No. 2, of Allegheny county. (3) In holding that Henrietta C. Smith had the power to make a valid assignment of a part of the trust estate to pay a bona fide debt.. (4) In holding that the assignment by Mrs. Smith to James R. Macfarlane and J. B. Carson of a portion of the corpus of the trust estate " was valid and gives them a preference over the second attachment of Dr. Bingaman."

*W. S. Dalzell,* for appellant.— (c) The trust is valid as between the cestui que trust and the trustee. The statute 13 Eliz.

makes void a deed only as against creditors, but not against the party himself, his executors or administrators : Buehler v. Gloninger, 2 Watts, 226 ; Reichart v. Castator et al., 5 Binn. 109 ; Ashhurst's Appeal, 77 Pa. 464; Ash's Appeal, 80 Pa. 497; Killinger v. Reidenhauer, Admr., 6 S. & R. 531.

The decisions have established :

First. That property cannot be limited to the grantor for life free from the claims of his creditors ;

Second. That property so placed is as far beyond the control of the grantor as it would be, had it been placed in trust for him by some person competent to do so.

*J. L. McKelvy* for *John B. Carson* and *A. M. Imbrie* for *Jas. R. McFarlane,* for appellees.—The law does not countenance multiplicity of suits nor circuity of action.

It is contended on behalf of Mr. Macfarlane that through his valuable services the fund is now here for distribution to the different creditors. These services were rendered in R. Patrick & Co. v. Mrs. Smith, reported in 165 Pa. 526. He has an equitable ownership in the fund, and it is found by the auditor that " he looked to the fund 'for its payment." Under the facts as they appear from the testimony it is submitted that this claim for professional services comes clearly within the case of Sterrett's App., 108 Pa. 615.

OPINION BY SMITH, J., July 16, 1896 (after stating the facts as set out in the above statement of facts) :

In determining the rights of the parties, it is necessary to consider the effect of the trust deed (1) on the control of the trust estate by Mrs. Smith, and (2) on the right of recourse to it by her creditors.

The character and incidents of trust estates have long been settled. The necessary parties are the settlor, the trustee, and the cestui que trust or beneficiary. These need not, however, be in all cases distinct persons. The same person may be settlor and trustee, as in Malone's App., O. C. Philadelphia, 13 Phila. 313; Supreme Court, 38 Leg. Int. 303; Crawford's App., 61 Pa. 52; Dickerson's App., 115 Pa. 198. He may be settlor and beneficiary, as in Mackason's App., 42 Pa. 330; Ashhurst's App., 77 Pa. 464; Ash's App., 80 Pa. 497; Ghorm-

ley v. Smith, 139 Pa. 584, and in the present case, which arises from the same instrument that created the trust in Ghormley v. Smith. But he cannot be trustee and beneficiary. One in whom the legal estate is vested cannot hold a separate equitable estate to his own use, in either the income or the principal; the two estates, uniting in the same person, coalesce, the equitable merging in the legal estate: Hahn v. Hutchinson, 159 Pa. 133; Ehrisman v. Sener, 162 Pa. 577.

With respect to the control of the trust estate, the rule is uniform, whether the parties are distinct, or are in part the same. The legal estate vests in the trustee, subject to the uses declared by the settlor, and is subject to his control alone except as otherwise limited by the settlor. The estate of the beneficiary is wholly equitable. It can be enjoyed and controlled by him only in the manner and to the extent fixed by the settlor. This enjoyment and control may be limited to the income during his life, or may embrace a power of appointment, special or general, by will; but such power will not operate to enlarge his interest or control beyond that expressly defined by the settlor. Whether the beneficiary be himself or another, the settlor parts irrevocably with his dominion of the trust estate except so far as he reserves it by the terms of the settlement. These principles, well established by authority, are illustrated in the cases already cited, to which may be added: Merriman v. Munson, 134 Pa. 114.

In the matter of recourse to the trust estate by creditors of the beneficiary, there is a radical difference between a trust in which the settlor and the beneficiary are different persons and one in which they are the same person. In the former, the estate may be settled to the use of the beneficiary without being in any manner subject to his liabilities. Examples of this are found in Keyser v. Mitchell, 67 Pa. 473; Overman's App., 88 Pa. 276; Thackara v. Mintzer, 100 Pa. 151; Trust Co. v. Guillou, 100 Pa. 258; Brooks' Estate, 140 Pa. 84. An instructive instance of failure to secure this result may be seen in Ins. and Trust Co. v. Chambers, 46 Pa. 485. Such a settlement is in no sense a conveyance in fraud of the beneficiary's creditors, since it is not his property but that of the settlor which is conveyed. It becomes the property of the beneficiary only so far as it is made such by the deed of settlement, and with only such con-

trol, incidents of ownership, and liability to creditors, as are therein given it. As the estate, in the settlor's hands, was not liable to creditors of the beneficiary, it is no fraud to deny them recourse to it in the hands of the trustee.

But another principle is involved when the settlor seeks to create a trust in his own property for his own use, to the exclusion of creditors. In considering what a debtor may do, and what he may not do, in the disposition of his property, we must have recourse to the common law and the statute of Elizabeth against fraudulent conveyances. The prohibition of conveyances with intent to delay, hinder or defraud creditors, would be of little use if the debtor may put his estate beyond the reach of creditors and still get a living from it: McAllister v. Marshall, 6 Binn. 338; Johnson v. Harvey, 2 P. & W. 82. Hence, while a man may exclude the creditors of another whom he makes his beneficiary, he cannot exclude his own creditors from recourse to his estate, legal or equitable. Though he may settle his estate beyond his own reach or control, by conveying to a trustee, he cannot by such a device place it beyond the reach of his creditors. Both the income which he retains and the corpus which he conveys remain subject to the demands of creditors, notwithstanding any provision to the contrary in the conveyance; and this liability extends not only to debts existing at the time of the conveyance but to those afterward contracted. In short, his estate, legal and equitable, is regarded as at all times assets for the payment of debts, and a conveyance of any part of it, with intent to place it beyond the reach of creditors, is deemed fraudulent. The effect of such a conveyance, in the eye of the law, is thus tersely described by Chief Justice KENT in Sands v. Cordwise, 4 Johns. 536: "A fraudulent conveyance is no conveyance as against the interest intended to be defrauded; it is the same as if no such deed had been executed. This is the plain language and intelligible sense of the rule of the common law."

In their application to a trust in which the settlor makes himself the beneficiary, these principles are fully established by the Pennsylvania authorities. In Mackason's App., 42 Pa. 330, in which the trust was for the use of the settlor, the provision excluding the creditors was substantially the same as in the present case. It was there held that the fund in the hands of

the trustees was liable for the payment of debts contracted by the settlor after the creation of the trust; the court saying : " The proposition is that such a settlor may be the complete equitable owner of all his property, deal as much as he pleases with it, and it shall not be liable for his debts. This would be a startling proposition to affirm. It would revolutionize the credit system, entirely destroy all faith in the apparent ownership of property and repeal all our statutes and decisions against frauds. Every man about to engage in business where there was a chance of loss would place himself under the tutelage of trustees, and everybody's estates would be passing under settlement deeds. . . . Here we have a direct attempt by one sui juris to guard his own property against his own contracts. In Thompson v. Dougherty, 12 S. & R. 448, a conveyance in favor of the wife of the grantor's whole estate (and that seems to be the case here) with an expectation of future indebtedness, was held void under the statute of 13 Eliz. as against such debts. There are numerous English decisions to show that a settlement is fraudulent under the statute of 13 Eliz. where the settlor takes back to himself an estate for life: 1 Atk. 13; 2 Id. 480, 512, 600 ; 2 Vern. 510." This case was cited in Lloyd v. McCaffrey, 46 Pa. 410, as sustaining the principle that " A man cannot settle his own property to his own use until a creditor shall assail it, and then over, so as to prevent the creditor from seizing it." It was again cited with approval in Ghormley v. Smith, 139 Pa. 584, which arose out of a creditor's claim against the very deed now before us. In that case the court said, " It has never been held by this court that a person sui juris could settle his estate upon himself, free from liability for debts. Indeed, the very contrary has been ruled in Mackason's App., 42 Pa. 330. . . . The policy of the law will not permit property to be so limited as to remain in the grantor for life, free from the incidents of property, and not subject to his debts. . . . There is no case in Pennsylvania which goes to the extent of recognizing a spendthrift trust, in which the grantor is himself the sole beneficiary for life, with power to dispose of the trust property at death, yet neither the income nor the corpus of the estate subject to his debts."

Upon the principles thus stated, the conclusions in the present case are obvious. The settlement of her estate made by Mrs.

Smith created an active and irrevocable trust. It vested the legal estate in the trustee, subject to the provisions of the settlement, and by those provisions her control and enjoyment of it was limited to the income during life, with a power of appointment by will. But while valid and irrevocable as against herself, as to her creditors "it is the same as if no such deed had been executed." It is wholly ineffective to withdraw her estate from process of law in behalf of creditors. Mrs. Smith having placed the corpus of her estate irrevocably beyond her control except as to the power of appointment, could not dispose of it by assignment. If she could do this, it would operate as a practical revocation of the settlement. The proposition that she may, by assignment, pay a debt which may be collected by process of law, overlooks an essential feature of the case. The power of assignment rests on a control of her estate beyond that which she has reserved. The right of a pursuing creditor rests on the grasp of her estate given him by law. This right is wholly independent of her control or of her consent. It cannot operate to enlarge her power over it even for the benefit of the creditor. What the law gives him, the creditor may take; she can give him nothing unless it is "so nominated in the bond." The trustee can recognize no disposition of the estate not authorized by the deed of settlement. Subject to the rights of creditors, to be exercised by due process of law, it is the duty of the trustee to preserve the estate for those in remainder.

The remaining question for consideration is whether the allowance to Macfarlane for services as attorney should be paid out of the fund to the prejudice of an attaching creditor. It is no doubt true that by reason of his services the judgment against Mrs. Smith was reversed and the right of Riddle to the fund thus terminated. But the services were rendered for Mrs. Smith and it is not claimed that Macfarlane acted in behalf of the trustee, or that he agreed to look solely to the attached fund for payment.

It is true that in equity a chancellor has power to direct the payment of reasonable counsel fees out of moneys for distribution, when the fund is the product of the attorney's labors and he has agreed to look to it solely for his compensation: McKelvy's App., 108 Pa. 615. And similar authority is vested in the orphans' court: Price's App., 116 Pa. 410. But there

is no warrant for the proposition that at law an attorney's claim for services, for a sum not judicially ascertained nor assented to by other claimants, is a lien upon the fund attached as against such claimants.   To hold that an attorney's fee is a lien on the money in court because it was recovered through his services, would be to ignore the doctrine of Dubois' App., 38 Pa. 231, the principles of which were distinctly recognized in McKelvy's App., supra, although the cases differ materially in their facts.

However desirable it may be to allow claims of counsel for services out of funds which those services secured, it cannot be done, in the absence of legislation permitting it, to the prejudice of other creditors who have liens upon the moneys.   This is essentially true where, as in this case, the fund is impressed with a trust in remainder.

The payment to Riddle under the attachment execution was not such a severance as would vest the principal of the fund in the beneficiary or estop the trustee from reasserting its claim to the money; but it having been seized by judicial process, for claims superior to those of either the trustee or the beneficiary, and the auditor having found that "All parties in interest, including the Trust Company, are parties to the proceedings," distribution will be made directly to those entitled.

The corpus of her estate being beyond her control, Mrs. Smith's assignment to Macfarlane & Carson could operate only on the income.   But while this assignment was prior to service of the second attachment, it was preceded by service of the first attachment.   The corpus of the estate attached, however, is more than sufficient to satisfy both writs.   On the principle of subrogation, when one creditor has recourse to two funds, and another to but one, the first shall be paid from the fund to which the other has no recourse, that the latter may be paid from the only fund within his reach.   We therefore permit the assignees to receive the income, and direct the following distribution of the principal:

I. The fees of the prothonotary, auditor, and garnishee's attorney, as reported by the auditor.

II. The costs of this appeal, which we direct to be paid from the fund.

III. The first judgment of Bingaman, or so much thereof as may be found valid.

IV. The second judgment of Bingaman.

V. The residue, with so much of the amount reserved to await determination of the validity of Bingaman's first judgment as shall not be required for its payment, to be paid on Macfarlane's judgment.

The decree of the court below is reversed, and it is ordered that the record be remitted and distribution made in accordance with this opinion.