## C. M. MERRIMAN v. C. L. MUNSON.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LYCOMING COUNTY.

Argued March 19, 1890—Decided April 7, 1890.

[To be reported.]

(a) A spendthrift, to prevent the dissipation of his estate, conveyed property to a trustee, the income thereof, after paying the expenses of the trust and the settler's debts, to be paid to his wife and children, during his life, for their sole and separate use, share and share alike, and so as not to be subject to his debts; after his death, the corpus to be distributed to his wife and children in accordance with the intestate laws:

1. When the creation of such a trust has been rendered necessary by the folly and extravagance of the settler, and he has voluntarily and intelligently executed such a deed, equity will not relieve him by setting it aside, though it convey practically his whole estate, without reserving any power of revocation or of support for himself, beyond his incidental rights as a member of his wife's family.

2. If one of the settler's properties was omitted from such conveyance, the fact that the trustee, although required by the terms of the trust to pay the settler's debts, did not pay off the liens upon that property out

Statement of Facts.

of the trust funds, but permitted the property itself, admittedly encumbered to its full value, to be applied to their payment, calls for no equitable relief against him.

3. Under such a trust, the settler has the benefit of a home and support, as a member of his wife's family, so long as his conduct is such that he may properly reside with his wife and children; but, after the affirmance by the Supreme Court of a decree dismissing a bill to set aside the trust as having been procured by fraud, such bill cannot be amended so as to aver the settler's improper exclusion from those benefits.

4. The settler, in such a deed, is a competent witness to testify before a master in support of an allegation that the deed was procured from him by a fraudulent combination between his brothers and the trustee, although his wife has an interest in the trust, when the wife is not a party to the deed, and, not being a purchaser of her interest under it, has no standing to resist its cancellation: Per BUCHER, P. J.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 253 January Term 1890, Sup. Ct.; court below, No. 1 March Term 1887, C. P. in Equity.

On December 3, 1886, Cyrus M. Merriman filed a bill in equity against C. LaRue Munson, averring that on December 9, 1884, the plaintiff, without consideration, conveyed to the defendant, by a deed absolute on its face, a large amount of real and personal property, the defendant making a parol promise to pay all the plaintiff's debts, pay him $50 per week for his support, and at his death to distribute said property and the accretions thereof to the plaintiff's wife and children, according to the intestate laws of Pennsylvania; that at the date of said deed the plaintiff was in feeble health and unable to reflect upon and understand a transaction of such importance, and he had executed the deed without understanding its effect, under the advice and counsel of the defendant, who was the plaintiff's legal adviser, and in reliance upon his ability and integrity, without having received from him any explanation in regard to it; that E. C. Merriman, the plaintiff's brother, had previously informed him that such a deed would be revocable at pleasure, and the plaintiff believed that the deed as executed by him was sufficient to protect him in his rights, and that it could be revoked by him; that on April 25, 1885, the defendant sent to the plaintiff a declaration of trust wholly unlike the parol promise contemporaneous with the execution

Statement of Facts.

of the deed, which the plaintiff refused to accept; that the defendant in various respects had failed to comply with said parol promise, as, among other things, he had permitted property of the plaintiff to be sold for the satisfaction of liens and taxes which it was the defendant's duty to pay; and that the plaintiff had by deed revoked said conveyance to the defendant. The bill charged, further, a conspiracy between the defendant and D. H. Merriman and H. A. Merriman, to defraud the plaintiff out of his estate, and prayed that the deed to the defendant be canceled and the record thereof expunged; that the defendant be ordered to deliver up to the plaintiff possession of all property taken charge of or claimed under said deed, and render an account of the income thereof; and for general relief.

The defendant answered, denying the charges in the bill, and issue was joined thereon; whereupon the court appointed *Mr. J. L. Meredith*, examiner and master.

At the hearing before the master the plaintiff was offered as a witness in his own behalf, when his competency was objected to upon the ground that his wife was interested adversely to him in the result of the case. The master reserved the question of competency for subsequent consideration, and took the plaintiff's testimony. The plaintiff denied therein that the defendant was ever his attorney, but testified in support of all the other allegations in the bill. In his report, the master passed upon the competency of the plaintiff's testimony, and ruled that under the deed and declaration of trust mentioned in the bill and set out in the findings of fact, infra, the plaintiff's wife had a legal, certain, and immediate pecuniary interest in the result of the issue, and hence the plaintiff's testimony should be excluded from consideration, citing: Miller on Competency of Witnesses, 92; Pringle v. Pringle, 59 Pa. 281; Yeager v. Weaver, 64 Pa. 425; Ballentine v. White, 77 Pa. 20.

In his report upon the matters in controversy, the master found the following facts:

Hiram Merriman died on February 27, 1881, leaving to survive him a widow, Adeliza M. Merriman, and four sons, D. H., Edgar Clarence, H. A., and the plaintiff, Cyrus M. Merriman. Said E. C. Merriman was an officer in the United States navy and had no fixed place of residence. The widow and the other sons resided at Williamsport, Pennsylvania.

Statement of Facts.

By his will, Hiram Merriman devised and bequeathed his entire estate to his widow and four sons, to be divided among them in accordance with the intestate laws of Pennsylvania; directed that the lumber business in which he was engaged, both individually and as a member of the firm of H. Merriman & Sons, composed of himself, D. H. and H. A. Merriman, should be continued after his death, until all indebtedness, either of himself or of said firm, should be fully paid, his executors taking his place in said firm; and appointed as his executors his wife and four sons, conferring upon them authority to cut timber from any of his real estate, in connection with the lumber business, and power to sell and convey any property of whatever kind, belonging to his estate. Said will was drawn by the defendant, who is an attorney at law and a nephew of the testator.

Letters testamentary were taken out by all those named in the will as executors. In accordance with the directions of the will, they carried on, after the testator's death, the lumber business in which he had been engaged individually, and assumed his place in the firm of H. Merriman & Sons. The plaintiff was a competent accountant, and from the death of his father until the fall of 1885, had charge of the books and accounts of the executors and also of the firm of H. Merriman & Sons.

The total value of the estate of the testator, real and personal, was in round numbers $830,000, subject to some indebtedness, the amount of which is not shown by the testimony. On December 9, 1884, the plaintiff conveyed to the defendant all his right, title and interest in all said property, in general terms, without any specific description thereof. The facts and circumstances connected with the execution and delivery of the deed therefor, as found by the master, were as follows:

Shortly after the death of his father, the plaintiff began a course of improvident and wasteful expenditure of money. He evinced a disposition to purchase articles which could be of no possible use to himself and his family, and to invest money in schemes and property of little or no value. The money used for these purposes was drawn chiefly from his share in his father's estate. From this source he had received since his father's death $51,581.46, the larger part of which he had wasted and expended unwisely.

He had also incurred considerable indebtedness prior to December 9, 1884, and had very little of property to show for it.

At, and shortly prior to the execution of the deed, aforesaid, the holders of the greater part of this indebtedness were urgently pressing for payment. The plaintiff was the executor or administrator of the estate of one A. E. Clement, deceased, and as such had collected and had in his possession the sum of about $4,400 belonging to said estate. This claim, on December 8, 1884, was in the hands of an attorney in Williamsport, who had already commenced proceedings to enforce collection, and was threatening criminal prosecution unless payment should be made. At the same time, also, other creditors were pressing their claims against the plaintiff, and, in some instances, had employed counsel to enforce collection.

The defendant was the legal and confidential adviser of the plaintiff in the matters which were then troubling him. The most intimate and friendly relations had always existed between them, and the plaintiff imposed implicit confidence in the defendant. Being thus pressed and without the means to satisfy this indebtedness, the plaintiff requested his brothers, D. H. and H. A. Merriman, who were his co-executors, and C. LaRue Munson, the defendant, to meet him at the residence of said Munson on the evening of December 8, 1884, for the purpose of considering his affairs and devising some method for his relief. They met him as requested.

At this meeting the plaintiff gave a statement of his indebtedness, amounting to $20,500, and of his assets, consisting of his interest in his father's estate; 31,380 shares of stock in the Atlantic and Gulf Coast Canal and Okeechobee Land Company of Florida, of which 9,380 shares were then pledged as collateral security for certain notes of the defendant in bank, and for 15,000 shares thereof the plaintiff had received no stock certificates; a house and lot on Fourth street, subject to a mortgage of $4,000, the title to which was in his wife; a house and lot on Elmira street, subject to a mortgage of $5,500; and certain personal chattels. He admitted that he had been wasteful and extravagant in the use of his means, and that his conduct in this regard was the cause of his troubles, and asked for assistance to relieve him from the pressing demands made upon him.

Statement of Facts.

D. H. and H. A. Merriman, his co-executors present, replied that he had drawn such large sums from the estate that they did not feel justified in permitting him to receive further amounts, unless he would make some arrangement by which such waste and indebtedness might be prevented in the future. It was there stated that giving him money seemed like throwing it away, and that the result in every case seemed to be an increase of his indebtedness.

The plaintiff then stated in substance that his debts were worrying him, and that he had come to the conclusion that it was best for him to fix his matters in the same way his brother Clarence had fixed his, a short time before, and he was willing to make a transfer of his property to a trustee by a process similar to that pursued by Clarence. Clarence, it appears, on November 20, 1884, having become involved, had transferred his property to Mr. Munson upon uses and trusts, as evidenced by a deed and declaration of trust offered in evidence in this proceeding.

The plaintiff was familiar with the process adopted by Clarence, and the uses and trusts upon which his property was held. The matter had been a subject of conversation between the plaintiff and his brothers at the time the transfer was made, and the defendant in this case had told him about it, and had shown him the papers therein. Clarence, prior to the meeting of December 8, 1884, had urged the plaintiff to make a transfer of his property upon trusts, as a means of affording him relief from his financial troubles. The fact that the plaintiff was in debt, and that his debts were pressing him was known to defendant as well as to plaintiff's brothers, for some time prior to December 8, 1884, and it was apparent that his financial troubles, and the devising of some method for their settlement, had been a subject of conversation to some extent among them all prior to that date, but it did not appear that any definite plan or arrangement had been agreed upon.

The plaintiff requested the defendant to act as the trustee. The defendant objected, but finally consented, on condition that all the property of the defendant should be irrevocably and unqualifiedly transferred to him, upon uses and trusts similar to those under which he held the property of Clarence. [These uses and trusts were fully explained to the plaintiff, as

Statement of Facts.

well as the effect of the irrevocable transfer of his property upon him and his estate, all of which the plaintiff thoroughly understood and comprehended] [3] and so declared at the time.

On the evening of December 8, 1884, the time of the meeting, the plaintiff was greatly troubled and anxious on account of his debts which were pressing him, and particularly on account of the criminal process threatened against him for misappropriation of the moneys belonging to the Clement estate. [He was not, however, under duress; neither was he in such great distress of mind as to deprive him of the power of fully understanding and comprehending the nature and character of the transaction then under consideration, nor was his condition such as to render him incapable of exercising an intelligent and deliberate judgment in the premises.] [2]

D. A. and H. A. Merriman consented to use their credit for the extension of his most pressing indebtedness until the defendant could realize sufficient from the property transferred to pay his debts, if the plaintiff would transfer his property in the manner suggested. This arrangement was then agreed to by all the parties present.

At this meeting, the plaintiff showed no evidence of illness and appeared to be in his usual health. All his declarations and statements were clear and distinct, and he appeared to understand everything that was said and done. On that evening, neither the defendant nor the executors present promised or agreed to pay plaintiff out of the estate transferred $50 per week, or any other sum, for the support of himself and family. The subject of the plaintiff's future support was, however, referred to at that interview, and it was stated that the income of his property, being paid to his wife and children, would insure him support, as he could trust them, and the plaintiff expressed the belief that through his wife and children his support was assured.

On the morning of December 9, 1884, the defendant prepared the deed from the plaintiff and wife to himself, and in company with Mr. Candor, his law partner, took it to the plaintiff's house, where it was then read over by plaintiff and its contents and legal effect were thoroughly explained to him and his wife by defendant, the plaintiff saying that he understood it and that it was in accordance with the understanding

and agreement of the night before; and thereupon plaintiff and his wife signed and acknowledged it before Mr. Candor, who was a notary public, and delivered it to defendant. The plaintiff, the same evening, assigned and delivered to the defendant certificates for 7,000 shares of the Florida stock.

The plaintiff and defendant had several interviews during the period between December 9, 1884, and April 10, 1885, in which the plaintiff asked for the promised declaration of trust, and the defendant asked for the evidence of ownership of the 15,000 shares of Florida stock, which the plaintiff stated he was unable to find. On April 10, 1885, the plaintiff brought to the defendant the papers evidencing his right to said stock, and delivered them to the defendant, with duplicate assignments thereof. Thereupon the defendant promised to execute and deliver the declaration of trust as soon as possible, stating that it would be similar in form and terms to that given to Clarence.

Owing to a press of business preparatory to a contemplated trip to the Pacific coast, the defendant failed to prepare the declaration of trust before April 22, 1885, on which day it was prepared, and having been acknowledged on April 24, 1885, it was sent by mail to the plaintiff, and a duplicate copy given to the plaintiff's wife. This declaration of trust was strictly in accordance with the promises and agreements assented to by the plaintiff at the meeting on the evening of December 8, 1884, and distinctly expressed the uses and trusts upon which the defendant was to hold the estate and property transferred to him by the deed of December 9, 1884, and as such was duly accepted by the plaintiff.

[The assignment and transfer of the plaintiff's property were not procured by fraud, mistake or undue influence exercised over him with intent to cheat and defraud him out of his property; nor was there any fraud, accident, mistake or undue influence in the transaction.] [5] The plaintiff executed the deed of December 9, 1884, upon the uses and trusts agreed upon the evening before and set forth in the declaration of trust, freely, intelligently and deliberately, after full explanation of its legal effect upon him and his estate, and without any undue advantage taken of his situation to induce its execution.

Immediately after the transfer, the executors used their credit

Statement of Facts.

for the relief of the plaintiff from his most pressing indebtedness, by securing an extension of time for its payment, and they subsequently paid the larger part thereof. Of the 15,000 shares of Florida stock, the defendant subsequently received through the plaintiff certificates for 12,500 shares, and litigation is now pending to recover the remainder. The plaintiff sold 2,100 shares of the stock transferred to him at 65 and 70 cents per share, but has been unable to sell any more of it at any price, there being no market for it. The personal chattels of the plaintiff, such as horses, wagons, etc., were never delivered into the actual possession of the defendant, but the same remained in the plaintiff's possession, under an arrangement made December 8, 1884, that the plaintiff should sell them and turn the proceeds over to the defendant. The plaintiff, however, made no sales under that arrangement. In February, 1886, during the plaintiff's absence from home, the defendant sold a part of that property and paid the proceeds, amounting to $585.50, to the plaintiff's wife, for the support of herself and children. Soon after, another portion of it was levied on for taxes and sold for $71 to a son of the plaintiff, who turned it over at his bid to the defendant. On September 11, 1886, the indebtedness on the Elmira street property of the plaintiff was settled by a conveyance of the property from the plaintiff and wife to the holders of said indebtedness in satisfaction thereof, the defendant managing said settlement and paying certain taxes, expenses and costs.

The plaintiff's wife and children separated from him some time in the spring of 1885, going to the residence of his mother, in Williamsport, where they remained for several months. They still remain separated from him,—his wife residing with her parents in Bradford, N. Y.

For the purpose of revoking the deed of December 9, 1884, given by him to the defendant, as aforesaid, the plaintiff on the first day of December, 1886, conveyed unto William H. Braine all the property and his right, title and interest therein, conveyed to defendant or intended to be so conveyed, and devised and bequeathed unto plaintiff by said Hiram Merriman, deceased, especially revoking therein the deed of December 9, 1884, and therein reserving the right to revoke said deed to said William H. Braine; and the said William H. Braine there-

Master's Report.

upon re-conveyed all of said property unto the plaintiff, his heirs and assigns, without reservation whatever, free from all trusts and uses.

Upon the foregoing facts, found by him, the master reported the following as his conclusions of law:

1. The plaintiff having complete dominion over his own property, had, under the law, the undoubted right to assign, transfer and convey the whole of it, real, personal and mixed, or any part thereof, unto the defendant, as trustee, without reservation and without any consideration whatever, upon such uses and trusts as to him might seem proper, for the benefit of his wife and children, if not prejudicial to the rights of his creditors.

2. The defendant, being the legal adviser of the plaintiff, in the matter of his troubles on account of his debts, and, although not benefited himself by the conveyance upon uses and trusts, (said conveyance being, in fact, voluntary, except in so far as the credit of the executors used for the extension of said debts constituted a valuable consideration,) occupied such relations of confidence toward the plaintiff that the burden of proof was cast upon him, who now seeks to support the conveyance, to show that he has taken no advantage of his influence or knowledge, and that the arrangement was fair and conscientious.

3. The deed of December 9, 1884, being absolute on its face, and containing no clause reserving the power of revocation, thus being in conformity with the agreement on the part of the plaintiff that the transfer should be irrevocable, and having been executed by the plaintiff intelligently and deliberately, and with a full knowledge and understanding of its legal force and effect upon him and his property, and his wife and children having a present interest in the estate and property transferred, and there having been no fraud, artifice or imposition made use of to induce him to execute said deed, and no undue advantage taken of his situation, the same is valid and binding upon him and cannot now be revoked.

4. The trusts in this case being perfectly created, so that the donor has nothing more to do, and the trustee and cestuis que trust having need of no further conveyances from the set-

tler, and nothing being required of the court but to give effect
to the trust as an executed trust, the same must be sustained
and carried into effect: 1 Perry on Trusts, § 98, and cases cited
in note.

5. The trusts in this case never having been rejected, and
being for the benefit of the wife and children of the plaintiff, in
favor of whom they are executed, they are presumed to be ac-
cepted by them: Stone v. King, 7 R. I. 358 (84 Am. Dec.
559); Stockard v. Stockard, 7 Humph. 303 (46 Am. Dec.
79); Skipwith v. Cunningham, 8 Leigh 271 (31 Am. Dec.
642).

6. Under all the evidence and facts, the bill filed in this case
should be dismissed, and the plaintiff should pay the costs.

Exceptions filed by the plaintiff having been overruled by
the master, they were renewed before the court on the filing of
the report. After argument thereof before BUCHER, P. J.,
20th judicial district, specially presiding, an opinion was filed
which after stating the facts found by the master, proceeded:

The master finds there was no duress; no advantage taken
of plaintiff's situation and necessity; no undue influence; and
that the plaintiff executed the said trust deed understanding-
ly; and, that, while he was worried about his debts, still, he
was in full possession of all his faculties, mental and physical,
and fully comprehended the legal consequences and effect such
a deed would have on his estate.

In reaching this conclusion the master excluded the testi-
mony of the plaintiff himself as incompetent to testify, because
of the interest his wife Georgia C. Merriman had as cestui que
trust, holding that the evidence of the plaintiff goes to the de-
struction of the trust, and hence the husband is incompetent as
a witness against his wife. But the wife is not a party to this
controversy, although interested in the result. Both the act
of 1869, and § 5, (c), act of May 23, 1887, P. L. 158 declares:
"Nor shall husband and wife be competent to testify against
each other." What does this mean—"testify against each
other?" In a suit between A. and B. a witness who is the
wife of C., not a party, may prove a fact, and her husband could
be called to disprove the same fact. It does not mean that
they may not, when not parties to the action, contradict each

other, for this is often done in practice. You may contradict the statements of the wife, as a witness, by her own husband. It must mean that in a suit between husband and wife they cannot testify against each other; nor where either is a party, can the other testify against such party.

It must be remembered that the act is rendering competent parties, as witnesses and others, excluded by the policy of the law. That a wife or husband cannot prove the adultery of each other, is to prevent bastardizing the issue. When this plaintiff is called to testify, he does so in his own behalf. His wife is not a witness nor a party to the suit, but is affected by the result, simply because the declaration of trust gives her an interest. She is not a purchaser of her interest for value. She has no standing to complain of a revocation of the trust, because as held in Frederick's App., 52 Pa. 338, "as to the children named in the grant, the deed being founded on no consideration from the trustees, was nudum pactum." And, as the wife is not of the blood of the husband, and the children are, it follows that she cannot resist revocation of the deed; and when the husband is admitted to testify he in no wise antagonizes the interest of the wife, because she has no rights which the law is bound to respect. It is said in Gleghorne v. Gleghorne, 118 Pa. 395, where the bill was filed by the wife against the husband, that the bill could not be sustained at all unless she was admitted to testify. But in that case she was not competent because she was plaintiff; but here she is not a party. The plaintiff here was competent to testify against the trustee defendant, as he did; but the master rejected his evidence in making up his report and in drawing his conclusions. In this we think there was error.

What effect, then, has plaintiff's evidence on this case? He says and swears that he was to have $50 per week for his own and family's support. If this was true, and omitted from the declaration of trust, equity would reform the trust by a decree giving him $50 per week; and in view of an apparent hardship we would be glad to do this. But his two brothers both swear, along with the defendant, that no such proposition was mentioned or agreed upon, and their testimony seems more reasonable, because it is manifest that the main purpose of the trust was to prevent the plaintiff from squandering his patri-

mony in the future, as he had so inconsiderately done in the past, in fancy horses and vehicles, and Florida land stocks. A man who had spent $67,000 and more, in less than three years, with so little to show for the money, would have regarded $50 per week as mere pocket money, and could not be trusted to apply it to the support of his family. Indeed, it is evident that this deed was intended to create a spendthrift trust, except that his wife was made the recipient of the income.

The refusal of his brothers, either as individuals, or as executors of their deceased father, to help him with their credit out of his difficulties, unless he would secure his estate to his wife and children, was commendable rather than censurable, for it was useless to give him relief and further opportunity to squander his inheritance. They were under no obligation to relieve him, and had the right to prescribe terms, not for their own benefit, but his family's. Neither they nor the trustee-defendant had anything to gain by the conveyance, in the sense of interest; that is, nothing is given to them as their own by the deed; merely the compensation to the trustee himself, which is under the control of the court.

But it is contended that the defendant was the legal adviser of the plaintiff, and, although the latter denies this himself, the master put defendant to proof of the fairness of the transaction, that it was distinctly agreed and understood that the deed was irrevocable; that there was no undue influence or unfair advantage taken of plaintiff's situation, as required by such cases as Miskey's App., 107 Pa. 611; Darlington's App., 86 Pa. 512; Russell's App., 75 Pa. 269. The declaration of trust in this case is in favor of the plaintiff's wife and children, the wife to receive the income for the benefit of the family; and, although plaintiff has reserved nothing for himself, yet as a member of the family he participates in the income so long as he chooses to live with his wife and family, and thus he is himself benefited. Had the income been payable to himself, his improvident habits would soon have subjected it to attachment for debts, and thus his family would have suffered.

It is clear that there was a necessity to denude himself in the manner he did, to prevent the total loss of his patrimony; in other words, he had to be saved from his own wastefulness and extravagant expenditure of his estate, and to do this, all power

of revoking the trust had to be withheld, else nothing would be gained by the creation of the trust. And the proof by these witnesses, as against the plaintiff's own testimony alone, shows that the power of revocation was purposely and knowingly surrendered by the plaintiff, in order to guard against his own inability to control or administer his property; and hence the omission of the power of revocation from his deed to the defendant is not only accounted for, but was a necessity, and repels any suspicion of mistake or misapprehension on the part of the plaintiff in executing the deed of trust. Had the plaintiff been an habitual drunkard, mismanaging and wasting his estate, as he did, an inquest would have been prompt to declare him incompetent. The duty of maintaining his family was imposed upon him by law, and, recognizing that obligation himself, he wisely saved for them what remained of his inheritance.

It is argued that plaintiff was recognized by defendant and the brothers as foolishly extravagant; as one not sound of mind in this particular, and it is then asked how can you sustain a deed made as this deed was by a grantor so conditioned as to mind and surroundings? We answer, even the deed of a lunatic is voidable, not void: 2 Bl. Com. 291; Kneedler's App., 92 Pa. 428; Lancaster Co. N. Bank v. Moore, 78 Pa. 407; where lunatics borrowed money and applied it to paying their debts, and the courts refused to avoid the loan. Here the plaintiff did a wise and manly thing in securing to his family, wife and children, his remaining estate. He did not deed it to strangers, as in Miskey's App., 107 Pa. 611; and in Darlington's App., 86 Pa. 512, the husband denuded his wife. In Frederick's App., 52 Pa. 338, the writing was testamentary.

If voluntary deeds creating trusts can in any case be sustained, it seems to us this case is one. The exact value of the father's estate when the debts are paid cannot now be known; but it is very probable that when settled it will not exceed $400,000, and this would give each heir, on the death of the mother, something like $100,000; and the plaintiff having received upwards of $80,000 already, there will remain but a comparatively small sum for the support of himself and family. There is only this apparently unreasonable feature in the declaration of trust, namely, that nothing is directly reserved to

Opinion of Court below.

the grantor. Yet, his benefit is manifest in the provision for his family. The law assumes that every good man lives with his family, and that all husbands may safely rely on the affection of the wife to give him a full share of all she has to give, experience showing that the trouble is to prevent the husband from getting the lion's share; it is the wife who has to be protected, not the husband.

In view of all the circumstances, what better could plaintiff have done, even for himself, than to surrender his dominion over the remnants of his inheritance, and save it from his wasteful habits and wild speculations, for himself through his wife and for his children. We will all concede that it is best as it is, and the circumstances which will compel the court to expose this remnant of plaintiff's fortune to his wild and visionary schemes and investments in stocks and trotting mares and stallions, and thereby jeopardize the very bread of his wife and children, and even his own livelihood as one of his wife's family, must be commandingly strong, leaving no other course open than the destruction of the trust. The plaintiff is an excellent book-keeper and can find employment by which he can support himself at least; and he should congratulate himself upon the wisdom and affection which prompted him to establish this very trust, an act noble and commendable in itself, and in view of his own weakness, a duty. It is useless to say more. The conclusions of the master are sustained, which disposes of the exceptions without considering them in detail. The bill must be dismissed, but we will not at this time make an order as to the costs.

A decree dismissing the bill having been entered, the plaintiff took this appeal, specifying that the court erred:

2, 3. In not reversing the master's findings of fact.[2] [3]

5. In not reversing the master's finding of fact.[5]

14. In not requiring the defendant to account for the value of the Elmira street property and of the personal property taken by the defendant.

15. In not decreeing the return of the unsold stock of the canal and land company, and payment for the shares sold by the defendant.

16. In dismissing the plaintiff's bill.

*Mr. H. N. Williams* (with him *Mr. N. C. Elsbree* and *Mr. R. H. Williams*), for the appellant:

1. Upon the plaintiff's theory and statement of this case, the trust is in effect testamentary and revocable at his pleasure: Frederick's App., 52 Pa. 338; Rick's App., 105 Pa. 528. In such case, equity would set aside the deed after a revocation, because it would be, or might become a cloud upon the title. All the findings of fact that we complain of, except that as to the plaintiff's health, are inferences, the result of reasoning, and do not have the same weight as a finding directly from testimony: Hindman's App., 85 Pa. 466; Milligan's App., 97 Pa. 525. The weak condition of the plaintiff's mind is shown, not only by direct testimony, but also by the very fact of his making an irrevocable conveyance of so large an estate as this without reserving any support for himself whatever: Davidson v. Little, 22 Pa. 245. Inadequacy of consideration is a very pertinent and potent circumstance to show fraud and undue influence: Perry on Trusts, § 187; Pomeroy's Eq. J., § 928; Story's Eq. J., §§ 246, 247. Dealings between attorney and client, or between persons otherwise occupying fiduciary relations, are closely examined by the courts: Perry on Trusts, §§ 203, 204; Story's Eq. J., §§ 218, 222, 307; Pomeroy's Eq. J., §§ 955, 956; Darlington's App., 86 Pa. 512; Miskey's App., 107 Pa. 611. Property obtained through confidential relations for the benefit of others not standing in such relation, is within this principle: Perry on Trusts, § 211.

2. In view of all the circumstances, it is impossible to come to any other conclusion than that the plaintiff was in such distress of mind as to be deprived of his free will and the full exercise of his judgment, in executing the deed. If so, equity will relieve him: Story's Eq. J., §§ 232, 233, 245; Perry on Trusts, § 192. The facts plainly indicate, also, that there was collusion between the defendant and H. A. and D. H. Merriman to obtain the deed from the plaintiff; that Clarence Merriman was made use of as an instrument to effect that purpose; and that his fears of a criminal prosecution were worked in to bring about the result aimed at. The explanations by the defendant of the nature of the trust deed, if he made any, were general and not specific. He did not inform the plaintiff that such deeds can be, and usually are made re-

Arguments.

vocable; that this deed would effectually cut off his support out of the estate transferred; nor that, in the event of the plaintiff's surviving his wife and children, the property would become vested in the defendant. His wife has left him. The entire income is hers and he cannot even intrude himself upon her: Commonwealth v. Springer, 14 W. N. 26.

3. That the plaintiff said he understood the effect of the transfer, amounts to nothing, if what he did was extorted from him through his fear and distress, and was influenced by the explanation Clarence had given as to the nature of such deeds. The latter circumstance is proper to be considered and should be given full force: Jordan v. Elliott, 12 W. N. 59. And if the defendant did execute the deed understandingly and intentionally, equity will set it aside if that intention was procured by misrepresentation, imposition, overreaching and collusion: Perry on Trusts, § 192; Story's Eq. J., §§ 249–251; Miskey's App., 107 Pa. 611; Russell's App., 75 Pa. 289; Darlington's App., 86 Pa. 512; Rick's App., 105 Pa. 528. There is an alternative proposition in this case, viz., that if this deed be decreed to stand, it becomes the law of the parties and cannot include property not mentioned in it. The Elmira street property was not included in the deed, but the mortgage thereon was a debt to be paid out of the estate conveyed to the defendant; and as the defendant suffered the property to go to pay the mortgage against it, he owes that sum to the plaintiff. By the same rule the defendant must account for the shares of stock, and the personal goods, that were never delivered to him by the plaintiff: Bond v. Bunting, 78 Pa. 210; Trough's Est., 75 Pa. 115.

*Mr. Addison Candor*, for the appellee, was not heard.

In the brief filed, he cited, (1) as to the measure of proof necessary to sustain the bill: Horton's App., 13 Pa. 67; Pusey v. Wright, 31 Pa. 387; Eberly v. Groff, 21 Pa. 251; Story's Eq. J., §1528; Audenreid's App., 89 Pa. 115; Cresson's App., 91 Pa. 180; Campbell v. Patterson, 95 Pa. 447; Burke's App., 99 Pa. 350; Stone v. King, 7 R. I. 358 (84 Am. Dec. 563). (2) As to the validity of the trust: 1 Perry on Trusts, §§ 98, 99, 104; Ritter's App., 59 Pa. 9; Frederick's App., 52 Pa. 338; Fellows's App., 93 Pa. 473; Dennison v. Goehring, 7 Pa. 175;

Opinion of the Court.

Greenfield's Est., 14 Pa. 489; Russell's App., 75 Pa. 269: Souverbye v. Arden, 1 Johns. Ch. 239; Bunn v. Winthrop, 1 Johns. Ch. 329; 2 Story's Eq. J., 118; Ellison v. Ellison, 1 Lead. Cas. Eq. 297; Stone v. King,.7 R. I. 358 (84 Am. Dec. 557); Smith's Manual of Equity, 103, 139, 140: Solms v. Trust Co., 16 W. N. 80; Hall v. Hall, L. R. 8 Ch. App. 430. (3) As to presumption of acceptance by cestuis que trust: Stone v. King, supra; Stockard v. Stockard, 7 Humph. 303 (46 Am. Dec. 79); Skipworth v. Cunningham, 8 Leigh 271 (31 Am. Dec. 642). (4) As to creation of a trust as to personalty by parol: 2 Story's Eq. J., 119, note; Ellison v. Ellison, 1 Lead. Cas. Eq. 308.

PER CURIAM:

The opinion of the learned judge below is so full and satisfactory that little remains to be added. It is a mistake to suppose, as was argued by the learned counsel for the appellant, that the latter takes no benefit under the deed of trust. On the contrary, he has the benefit of a house and a support so long as his conduct is such that he may properly reside with his wife and children. If this bill had alleged that he had been improperly and without cause excluded from the house occupied by them, and from the benefits and comforts thereof, we would have had an entirely different question before us. But the object of the bill was to strike down the trust upon the ground of fraud. Of this there was no evidence. The deed was his own act, to save him from the results of his folly and extravagance. It was a spendthrift trust, executed by a spendthrift. To have inserted a clause of revocation in such a trust would have been an act of extreme folly, as it would have rendered it of no value for the protection of his estate. That it conveyed what was practically the whole of his estate does not invalidate the trust. He was not stripping himself of his property for the benefit of strangers, but was preserving it for the support of his wife and family, and incidentally his own. In this respect the case bears no analogy to those which hold that when a man makes a voluntary conveyance of his whole estate for the benefit of a stranger, without consideration, and without reserving a power of revocation, equity will relieve against it. The execution of this deed of trust was probably the

wisest business transaction the plaintiff ever performed. It is perhaps natural that, after the removal of the pressure of the financial troubles which induced the act complained of, he should regret having placed his estate beyond his control. Any spendthrift would.

A word as to the alternative proposition, as it was termed by plaintiff's counsel. The learned master has found that, as to the personal property embraced therein, it was the understanding and agreement that it should be included in the trust, and it was transferred to the trustee at the time, so far as it could then be delivered; that the Fourth street house belonged to the plaintiff's wife; and that the Elmira street house was omitted from the trust because it was admittedly encumbered to its full value. We find nothing which calls for relief in this branch of the plaintiff's case.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

After the foregoing opinion was delivered, the appellant filed a motion for a re-argument and for leave to amend the bill.

The reasons assigned in support of the application for re-argument were: (1) That the case involved the right to a large amount of property, was one of considerable importance, and it had not been heard and decided by a full bench; (2) that the opinion filed indicated that it was the understanding of the court that the plaintiff had a house and support at the date of the argument, whereas the contrary was the fact, his wife and children having separated from him, as was shown before and found by the master, and the homestead having been sold by the sheriff on a municipal lien for $41.40, which the trustee should have paid off, this sale resulting in the ejection of the plaintiff from the house by process of law, after the evidence had closed; (3) that all the facts, which, as the opinion indicated, would entitle the plaintiff to relief, actually existed; that the prayers for relief in the bill, especially the general prayer, were sufficient for it, and if the bill were lacking in sufficient allegations, an amendment should be allowed.

The amendment to the bill, which the plaintiff prayed for

Opinion of the Court.

leave to make, was the addition of the following averments thereto :

That Georgia C. Merriman, your orator's wife, has taken their children and hath separated them and herself from him without cause and still doth continue to separate herself from him without cause : That your orator has been improperly and without cause excluded from the house of his said wife and the comforts thereof, and is without any support.

—Appended to the plaintiff's application was his affidavit setting forth that in March, 1886, his wife without cause left the dwelling in which they had resided previously, and had since persisted in living separate and apart from him; that he continued to live in said dwelling until October 18, 1887; that it was sold by the sheriff on March 11, 1887, upon a municipal lien for $41.40, which should have been paid by the defendant as trustee, and the affiant was put out of possession by process of law after the testimony was closed in this case, and since that time he had had no habitation or place of residence, had not received from his wife or from the defendant any means for his support whatever, and was now without the means of support; praying that the case be referred back to the master to take further testimony, and that equity and justice be done, etc.

PER CURIAM, May 5, 1890 :

There is nothing in any of the reasons assigned which entitles the appellant to a re-argument. The bill was filed for the purpose of having the deed of trust declared null and void. If the appellant has been denied any rights to which he is entitled under the deed, that is another matter and not necessarily involved in this controversy. In dismissing the bill, as filed, that question was left open, as will be readily seen by an examination of the opinion.

In addition to the request to grant a re-argument, we are asked to allow the bill to be amended so as to raise the question above referred to. This cannot be done after a final adjudication in this court. That litigation is ended. It leaves the matter open, however, to the appellant, to file another bill in the court below, not in antagonism to the trust, but claiming his rights under it. It appears to us, however, that the

good sense of all the parties in interest ought to render this course unnecessary.

> The motion for a re-argument and for leave to amend the bill is denied.