## Willard, Appellant, *v.* Integrity Trust Co.

*Trusts and trustees—Deed of spendthrift and drunkard—Absence of power of revocation—Mistake—Undue influence.*

1. Where a drunkard and spendthrift, with full knowledge of his condition and incapacity, conveys his real estate by deed with-

out power of revocation to a friend, who acts in good faith, administers the property, paying the income to the grantor, and after several years conveys the property to a trust company in a spendthrift trust for his grantor for life with power of disposition by will, the grantor cannot, twenty years after his own deed was executed, demand a reconveyance, and especially is this so, where his incapacity has continued.

2. In such case, the absence of a power of revocation was not evidence of a mistake.

3. Undue influence may be exerted by a friend with the object of helpfulness, but courts are slow to regard such acts as overpersuasion when the end to be obtained is purely and wholly for the benefit of one upon whom the undue influence is supposed to have been exerted.

Argued January 5, 1922. Appeal, No. 437, Jan. T., 1921, by plaintiff, from decree of C. P. No. 3, Phila. Co., June T., 1896, No. 1081, dismissing bill in equity in case of Oliver H. Willard v. Integrity Trust Co. and Edwin A. Landell, Jr. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for a reconveyance of real estate. Before McMICHAEL, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting it.

*E. Spencer Miller,* for appellant, cited: Miskey's App., 107 Pa. 611; Bristor v. Tasker, 135 Pa. 110; Chestnut St. Nat. Bank v. Trust Co., 186 Pa. 333.

*W. B. Saul,* of *Saul, Ewing, Remick & Saul,* with him *Francis H. Bohlen, Jr.,* for Edwin A. Landell, Jr., appellee, cited: McCloskey v. McCloskey, 205 Pa. 491; Jourdan v. Andrews, 258 Pa. 347; Neal v. Black, 177 Pa. 83.

*J. Rice Guckes,* for Integrity Trust Co., appellee.

OPINION BY MR. JUSTICE KEPHART, February 6, 1922:

Notwithstanding the many difficulties attending the subject-matter of this litigation in the past twenty years, we are satisfied, after a careful review of the record, we may safely rest our conclusions on the facts found by the learned trial judge of the court below, as follows:

"Oliver H. Willard [plaintiff] was the owner and tenant in common with one of his sisters, and trustee for another, of improved property situated on the south side of Chestnut Street, above Twelfth, bearing the number 1206 Chestnut Street, Philadelphia. The plaintiff had received a common school education  He finished school at fifteen and went into commercial life on Market Street as a clerk. He lived with his mother and helped her somewhat in the care of the property at 1206 Chestnut Street. He became addicted to alcoholic intemperance. He ceased to do any work and became a drunkard. The taxes and mortgage interest accumulated on the property, and he was in danger of losing it. In August, 1894, he applied to Edwin A. Landell, Jr., for assistance. The latter was a man of good business abilities, and had been a personal friend of Willard. Plaintiff's mother, who died in November, 1891, had exacted a promise from Landell on her deathbed that he would watch over plaintiff's career. Landell declined to render the pecuniary assistance which Willard requested, but proposed a conveyance to another person as trustee. No choice of a trustee was made, however, and Landell accepted an absolute deed to himself for the property, without power of revocation. One thousand dollars was handed over by Landell to Willard at the time of the execution of the deed, but was given back to the former who used it for the benefit of the property. Landell took good care of the property during his ownership, and, owing to his care of it, the interest on the mortgage and the taxes were paid, and the property, having increased in value, is now worth, so it is estimated, five or six times what it was when Willard conveyed it to Lan-

dell. Willard kept on drinking for many years, and, during this period, while still a hard-drinking man, he filed a bill in the Court of Common Pleas No. 3, to revoke the deed which he had executed to Landell. Subsequently, however, he withdrew this bill and also all the charges he had made against Landell. April 13, 1900, Landell executed a deed to the Integrity Trust Company, which is a defendant here, subject to a spendthrift trust, to hold and manage the property and pay the net income to the plaintiff for life and after his death to convey to the plaintiff's appointee by will or, failing an appointment, to those who would take under the intestate laws. The trust company has paid the net income to date to plaintiff. In or about the year 1907, plaintiff went to the Franklin Home in Philadelphia, for treatment as an inebriate, and the evidence is that, for more than twelve years last past, he has refrained from the use of alcoholic beverages. He was married in April, 1914. In 1919, he filed this bill to have the property reconveyed to him absolutely and in fee."

The trial judge further finds "there was no fraud or imposition practiced when the deed was made......; Landell acted in perfect good faith and for the best interest of Willard through the whole transaction. Landell never contended the deed to him, though absolute on its face, was free from the obligation to do the best he could for Willard with the property; this obligation was discharged. The trust deed to the Integrity Trust Company gave to Willard power to dispose of his property at death......Looked at from the point of view of the present and considering his past experiences......, it is better for the plaintiff that the property should remain in trust......Willard is not competent to care for his property." Upon these findings the court below dismissed the bill.

Appellant's counsel earnestly contends the conveyance from Willard to Landell was procured through undue influence, therefore it was not a sale, and, if one, it was

impressed with a trust,—that, notwithstanding a deed absolute on its face was delivered, the land was to be held free from Willard's wastefulness and control, but for his benefit during such time as Willard was an habitual drunkard; Willard, having reformed, and for more than twelve years ceased drinking liquors, the object of the trust ceased and the property must again be placed in his possession; the conveyance to the Trust Company, being in excess of the trustee's power, will not affect its subsequent return.

We appreciate undue influence may be exerted by a friend with the object of helpfulness, but courts are slow to regard such acts as overpersuasion when the end to be obtained is purely and wholly for the benefit of the one upon whom the undue influence is supposed to have been exerted. There should be other circumstances, in addition, to cause the court to act; such was the case in Bristor v. Tasker, 135 Pa. 110. While the relations between these parties had been close, they should not be regarded as confidential,—Landell's care being influenced to some extent by a promise to a dying woman. Under all the testimony, plaintiff relinquished his property as an intelligent act of his own free will.

The circumstances, then and later attending it, do not detract from the ultimate effect in view. As the legal title stood, it was simply a deed; Landell could dispose of the property and a good title would pass. There was nothing of record to show a trust: Act of April 22, 1856, section 4, P. L. 532; McCloskey v. McCloskey, 205 Pa. 491, 495. Landell did not regard it as his own, but, as found by the court below and approved here, held the title under an irrevocable trust. This must have been so to effectuate the original purpose now claimed by Willard. Had the trust been written into the conveyance, it would have been one that protected against the results of Willard's habits, debauchery and extravagance. "It is clear that there was a necessity to denude himself in the manner he did, to prevent the total loss

of his patrimony; in other words, he had to be saved from his own wastefulness and extravagant expenditure of his estate, and, to do this, all power of revoking the trust had to be withheld, else nothing would be gained by the creation of the trust": Merriman v. Munson, 134 Pa. 114, 126; see Neal v. Black, 177 Pa. 83. And the absence of a power of revocation is not evidence of a mistake, since the existence of the power would defeat the purpose of the trust. A part of the purpose was to guard against the loss of Willard's property,—to save him from his own wastefulness and extravagance. But, whether we view the trust as revocable or irrevocable, Landell did not breach it when he conveyed to the Trust Company, for at that time, and for many years thereafter, plaintiff was an habitual drunkard, entering an institution for the cure of such inebriates in 1907. Landell, in his conveyance to the Trust Company, put in permanent form his trusteeship; by so doing he did not defeat any known element of the acknowledged preëxisting trust; the fact that its purpose has stood unchallenged in the deed to the Trust Company for twenty years, during twelve of which plaintiff might have contested it, affords the strongest kind of proof that it was in accord with the precise terms of the parol arrangement then acknowledged by Landell and accepted by Willard, and should be conclusive. But, whether we shall treat Landell's recognition of the trust and subsequent conveyance to the trust company as an irrevocable spendthrift trust, or one revocable when the condition upon which appellant declared it was granted has disappeared, the court's concluding finding, which we approve, settles the matter. The condition there found may fairly be inferred as the result or vestige of his past intemperance and former manner of life.

The decree of the court below is affirmed, costs to be paid by appellant.