## McCreary's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*. . Charles Myers and Robert Dechert, for exceptants,* children of Dorothy.

*Henry S. Drinker,* for fiduciary exceptants.

*Highley & Semans,* for exceptant O'Mara

HUNTER, J., March 29, 1945.—In prior litigation in this estate, the life estates of settlor's daughters Mabel and Dorothy were found to be separable from remote limitations under the rule against perpetuities, and to that extent the trust was sustained: McCreary's Trust Estate, 328 Pa. 513.

Now Mabel has died and the question arises as to the validity of the limitations which were to take effect upon her death. The auditing judge has found that the primary limitation to Mabel's child, which was conditioned upon such child being alive at Mabel's death, was contingent and void because the event might not occur within the limits of the rule. He sustained, however, the secondary limitation of one half of Mabel's share to the surviving daughter Dorothy for life, on the ground that Dorothy's interest in Mabel's share vested not later than the death of the settlor, subject to be divested.

Three sets of exceptions have been filed. We will first consider the exceptions of Dorothy's children, who are remaindermen, and who contend that no part of the trust violates the rule against perpetuities.

They contend that remoteness is to be measured from the exercise of the power and not from the date of the deed, first, because the donee of the power, since she was also the donor, should be regarded for all practical purposes as the owner of the property, and, second, because the future interests were destructible by the settlor.

The applicable rules of law are as follows:

In the case of a deed, remoteness is measured from its date: Cox et al. v. Dickson, 256 Pa. 510; Lammot v. Home of the Merciful Savior, 68 Pa. Superior Ct.

597. Settlor's children were not lives in being at the date of the deed.

As was said in Gray on Perpetuities, §371:

"In a marriage settlement limitations to the grandchildren of the parties of the marriage are not good, and limitations to the children, in order to be good, must vest in them not later than twenty-one."

Where there is a testamentary power as distinguished from a power to appoint both by deed and by will, the period of the rule runs from its creation and not from its exercise: Cox et al. v. Dickson, supra. The remainders given in default of the exercise of the power cannot be destroyed during the life of the donee, but only by testamentary appointment. The statement in Lyon et al. v. Alexander, 304 Pa. 288, 292, that ". . . where the power is a general one under which the donee may appoint to anyone, the testator has completely relinquished all dead hand dominion over the property and has placed it for all practical purposes as completely within the control of the donee of the power as though a fee had been created in him", applies only to the rights of appointees. That case gave to the donee the right to extinguish a power, but the extinguishment was a confirmation and not a destruction of the interests of the remainderman who would take in default of its exercise.

We know of no exception to the above rules in the case of a donee who was also the donor. The title and dominion is regarded as having passed from the donor at the date of the deed and the suspension of vesting to have then begun.

The A. L. I. Restatement of the Law of Property states, §373:

"The period of time during which an interest is destructible pursuant to the uncontrolled volition and for the exclusive personal benefit of the person having such a power of destruction is not included in determining whether the limitation is invalid under the rule against perpetuities."

The exceptants' contention is based on the principle that the reservation by a settlor of the income of his own property for life and of a general testamentary power do not remove the trust res, either income or principal, from the claims of his creditors, whether present or future. This was established in Mackason's Appeal, 42 Pa. 330, and the principle was extended by Mogridge's Estate, 342 Pa. 308, to a voluntary assignment by the settlor for the benefit of creditors. That, however, is the present limit of the doctrine. The Supreme Court in Mogridge's Estate was careful to say (p. 314):

"Whether the settlor might voluntarily assign his interest to one other than a creditor need not now be decided, and we express no opinion thereon."

In our opinion a distinction is to be made between the rights of creditors and the rights of a settlor who has made an irrevocable gift. A fraudulent transfer of property cannot be set aside by the grantor or for the benefit of his heirs; it can be set aside only to the extent that the property is required to satisfy the claim of the creditor: Ziska v. Lerch et vir, 155 Pa. Superior Ct. 481.

This deed contains a limitation in default of appointment to the children and issue of the settlor, and as well a declaration that all power of revocation or alteration has been intentionally omitted.

This provision for the children and issue of the settlor creates an interest in them. It is very different from the gift in default of appointment in Mogridge's Estate, which was to the persons entitled under the intestate laws. When the remainder interest is to the settlor's next of kin, it is in substance a remainder to himself. A remainder to his children is something quite different. See Restatement, Trusts, §§127(a), 339(b).

There are many cases in which a trust has been sustained against the settlor, notwithstanding his reservation of both the income for life and a power to appoint the principal by will, of which may be cited Reese

v. Ruth, 13 S. & R. 434; Ashhurst's Appeal, 77 Pa. 464; Reidy v. Small, 154 Pa. 505; Rynd v. Baker et al., 193 Pa. 486; Potter v. Fidelity Insurance Trust & Safe Deposit Co. (No. 1), 199 Pa. 360; Fry v. Mercantile Trust Co. of Pittsburgh, 207 Pa. 640; Willard v. Integrity Trust Co., 273 Pa. 24. We do not believe that Mogridge's Estate, supra, indicates the reversal of this line of cases. In this connection see Kutz v. Nolan, 224 Pa. 262, where a settlor gave a judgment note as security for a loan which was alleged to be a mere device to defeat the trust, and the record was sent back to have the question of collusion determined by a jury.

A trust will be enforced in favor of the beneficiaries though their enjoyment is postponed until the death of their benefactor; equity has revoked a trust, or held it revocable by the settlor, only because of exceptional facts in rare cases: Wilson et ux. v. Anderson et ux., 186 Pa. 531.

A settlor should not be permitted to destroy a limitation over to children and issue, particularly where as in this case the settlor by express declaration omits all power of revocation or alteration.

The exceptions of Dorothy's children are without merit and are dismissed.

The second and third sets of exceptions are by Sybille von Schlotheim O'Mara, child of Mabel Paine von Schlotheim, settlor's daughter, filed by The Manhattan Company, trustee under deed dated August 23, 1937, of the said Mabel Paine von Schlotheim, and by Bankers Trust Company and J. Howard Eager, executors of her will. They acquiesce in the finding of the auditing judge that the primary limitation to Sybille and other possible children of Mabel, living at the time of the latter's death, was contingent and void under the rule against perpetuities. They contend, however, that the auditing judge erred in finding that the secondary limitation of one half of Mabel's share to Dorothy for life did not violate the rule, having vested at the time of the settlor's death, subject to divestment; and further, that the whole of Mabel's share should pass under

the provisions of the original deed made in default of appointment to Mabel and Dorothy, Mabel's share being payable to The Manhattan Company, trustee, under her deed of assignment.

Simplified, these limitations are, first, a limitation to the children of B, if living, and second, if not, a limitation to C.

The nature of the secondary limitation to C is important because, if vested and valid, it could never be divested because the alleged divesting contingency, the death of B leaving children, is too remote.

The auditing judge is sustained by citations of authority, particularly Packer's Estate (No. 2), 246 Pa. 116, and Neel's Estate, 252 Pa. 394.

Attention, however, is directed to Judge Keller's opinion in Moss' Estate, 80 Pa. Superior Ct. 323, in which there is a learned discussion of such limitations. Judge Keller (p. 327) adopts what he calls "the more scientific view" that such limitations together are "a contingent remainder with a double aspect or on a double contingency"; that they are "concurrent contingent remainders".

Judge Keller points out (p. 329) that much of the want of harmony in the cases has been caused by confusing the terms "vested" and "transmissible", and that the question in the cited cases was not so much whether the remainder to C was vested as whether it was transmissible and passed to the deceased remainderman's representatives. A remainder to C, should B die without issue, is transmissible because the contingency does not affect the capacity of C to take; the contingency is whether B leaves issue and not whether C is living or dead.

The A. L. I. Restatement of the Law of Property, §278, sustains this view and holds that the limitations "are both subject to a condition precedent".

That Judge Keller was correct in his view appears from Packer's Estate itself. Mr. Justice Moschzisker apparently preferred to call the remainder to C "vested

subject to be divested," but stated in Packer's Estate (No. 2), 246 Pa. 116, 127:

"But after all is said, as stated by the learned court below, it is not material whether the interests in question, strictly speaking, should be termed vested or contingent; the real point is, were they transmissible from the date of the testator's death."

In Neel's Estate, 252 Pa. 394, 406, the court, in referring to the case of Frasier v. Scranton Gas & Water Co., 249 Pa. 570, said:

"On the facts in that case, as in many others of its kind, so far as concerns its final determination, the result would have been precisely the same whether the limitation over were construed as a contingent remainder or as one vested, quodam modo, subject to be defeated."

In all the cited cases the result would have been the same whether the limitation were held to be vested or contingent, and none involved the rule against perpetuities. In the instant case, the form of the limitation profoundly affects the result.

Under the above-cited section 278 of the Restatement of Property, comment (a), appears the following:

"As long as the first-stated limitation creates a fee interest subject to a condition precedent the second-stated limitation must be construed to create also an interest subject to a condition precedent. Otherwise, there would be a violation of the rule, recognized since the time of Loddington v. Kime, 1 Salk. 224 (1695), that 'no remainder limited after a limitation in fee, can be vested.' This traditional rule is also supported by the fact that the attribution of vestedness to the interest created by the second-stated limitation would be likely, under some circumstances, to give to the taker of such interest, advantages and preferences over the takers under the first-stated limitation not reasonably inferable to have been intended by the conveyor, as for example, validity under the rule against perpetuities excluding forever the takers under the first-stated

limitation. Thus if A transfers Blackacre 'to my son B for life and thereafter to such of the children of B as shall attain the age of thirty years, and if none of the children of B attain that age then to the C Charity', the construction of the interest in the C Charity as vested subject to defeasance by the fulfillment of the condition precedent of the first interest would permit the C Charity to take indefeasibly and without regard to whether B has the specified children or does not have them. By the application of the rule stated in this Section both the interest limited to C and the interest limited to the children of B are subject to a condition precedent and both fail under the common law rule against perpetuities. The resultant complete invalidity of the limitation would commonly permit the close relatives of the testator to take by intestate succession."

Perhaps the advantage given the surviving daughter in the instant case is not regrettable, as the inheritance is kept within the family. But the facts might be different, and no principle should be adopted which might in another case disinherit families of grandchildren and send property out to secondary objects and strangers.

We conclude that all limitations at the death of Mabel Paine von Schlotheim are contingent and void, and that the one half of the trust estate passes under the alternative clause in the original deed made in default of appointment in the proportions of one half to Dorothy Paine Pitts and one half to The Manhattan Company, trustee, assignee of Mabel Paine von Schlotheim.

As to the one half of the original estate which continues in trust for Dorothy Paine Pitts, neither the adjudication nor this opinion is to be construed as a determination of the validity of the limitations to take effect upon her death.

The exceptions of Tilghman G. Pitts, Jr., Clinton Paine Pitts, and Alice McCreary Pitts Gardiner are dismissed, all other exceptions are sustained, and the adjudication as modified is confirmed absolutely.