Kahan, Appellant, v. Greenfield.

Argued April 14, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*Louis Vaira,* with him *Thomas P. Nee,* for appellant.

*Wm. M. Kahanowitz,* with him *David H. Weiss,* for appellee.

OPINION BY RENO, J., July 15, 1949:

Appellant seeks a decree in equity to compel defendant to reconvey a house and lot which he avers she procured from him by fraud and undue influence. He also alleged, and she admitted, that he had deposited with her from time to time sums aggregating $186.31. The learned chancellor found facts and conclusions of law and entered a decree nisi ordering only the refund of $186.31. The court en banc overruled appellant's exceptions. The final decree, besides requiring repayment of the deposit, adjudged defendant owner of the property, subject to appellant's possession and use of the downstairs or basement apartment of the premises for life and, should

the property be sold during his life, required that $800 be paid to him and the life estate terminated.

The chancellor's findings of fact, having been adopted by the court en banc, have the force and effect of a jury verdict, and will not be disturbed on appeal if supported by evidence of the required quality. *Christy v. Christy*, 353 Pa. 476, 46 A. 2d 169. Our careful study of the testimony has induced the conclusion that the findings are abundantly supported by competent evidence, and the decree will be affirmed.

Appellant, now 69 years old, is a naturalized Russian and, with his wife, emigrated to America in 1912. He can speak English and write his name. He purchased the property involved in 1924 for $3400, taking title by the entireties. In 1934 his wife left him and later remarried. In 1939 he was notified that his taxes were in arrears and his property would be sold. He applied to several persons for a loan but they refused because he could not secure his wife's signature to the necessary documents. Finally he turned to defendant whom he had known for many years, having dealt at the grocery store conducted by her family and later by her. She agreed to see her brother, a lawyer, David H. Weiss, Esq. It was learned that appellant's wife, who entertained bitter feelings toward him, would not sign a deed granting the property to appellant, but would sign one granting the property to defendant if defendant agreed never to convey to appellant, and if she was paid $100 for her signature.

The transaction was closed on that basis. Appellant, his former wife and her husband signed the deed; defendant paid $100 to the former wife, and taxes amounting to $700; and an oral agreement, not incorporated in the deed because of its effect upon the marketability of the title, was made to which there is a further reference herein. At that time the property was worth between $2000 and $2500.

For four years, pursuant to the oral agreement, appellant occupied the same basement apartment in which he had lived prior to the conveyance, and was not charged, nor did he pay, rent for the apartment. In 1943 he became worried regarding his future possession and wanted a lease for the portion of the property he was occupying. He consulted George Fritch, Esq., and explained the details of the former transaction. Apparently he made no complaint concerning it or its fairness, and his only concern was that the oral agreement be confirmed by a written instrument. Mr. Fritch prepared a written contract which appellant and defendant signed, the terms of which were substantially incorporated in the final decree. It also provided that his deposit of $186.31 could be claimed by him at any time.

Appellant's case is founded upon the legal proposition that a confidential relation existed between the parties and that defendant carried the burden of establishing that the transfer of title was not fraudulent. A confidential relation can of course exist between friends; "a confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest:" *Drob v. Jaffe*, 351 Pa. 297, 300, 41 A. 2d 407. But to establish the relation more than mere friendship must be proven; additional circumstances must be shown to cause a court to act. *Willard v. Integrity Trust Co.*, 273 Pa. 24, 116 A. 513. And where the conveyance results in a benefit to the grantor it will not be set aside, even though the grantee was the grantor's friend and persuaded him to make the conveyance. *Willard v. Integrity Trust Co.*, supra; *Boyd v. Kilmer*, 285 Pa. 533, 132 A. 709. "Where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily

known as confidential in law, the evidence to sustain a confidential relation must be certain; it cannot arise from suspicion or from infrequent or unrelated acts": *Leedom v. Palmer,* 274 Pa. 22, 26, 117 A. 410. See also *Bauman v. Reithel,* 302 Pa. 239, 245, 153 A. 330.

The evidence shows nothing more than that the parties were friends; defendant knew appellant as a near neighbor and a patron of the grocery store. She was never his advisor or counsellor. They had no prior business transactions, and she performed no service for him, except to hold his savings subject to his order. He fully understood the terms of the conveyance, for he explained it thoroughly and accurately when he consulted Mr. Fritch four years later. It was not made under defendant's influence; he solicited her help in a situation where other assistance had been denied him. His object was to assure to himself permanent occupancy of that part of the house in which he was then living, and he secured it. He was then living on WPA wages; his taxes were long overdue and the property was about to be sold; his wife refused to sign documents by which he could procure a loan; and but for the timely assistance rendered by defendant his entire interest in the property would have been swept away. As it turned out, he retained virtually a life estate in part of the house, and this is all he sought. Viewed in that light, the transaction actually conferred a benefit upon him. His complaint that he acted under an "emotional upset" produced by his wife's elopement must be dismissed; she had left him five years before he conveyed the property to defendant.

Appellant's prime reliance is *Brooks v. Conston,* 356 Pa. 69, 72, 73, 51 A. 2d 684. That case provides no support for him. There Conston had been a next door neighbor of the decedent, was socially intimate with him and his widow, and advised the widow concerning the conduct of her deceased husband's business. "He strongly recommended that she sell the stores without delay. . . .

During the first four months following the death of decedent the widow made $42,000 unsecured loans to Conston, at his solicitation." She sold the stores to Conston for $22,500 when, as a matter of fact, Conston's accountant knew that a Chicago merchant had offered to pay approximately $40,000, and had informed Mrs. Brooks that the offer was for $20,000. The *Brooks* case involved a base fraud perpetrated by a close friend and advisor of many years standing, a fraud which entailed a large financial loss. The facts of the case do not touch the situation presented in this appeal.

For unstated but doubtless sufficient reasons the court below imposed the costs upon defendant, and we shall follow that course.

Affirmed at appellee's costs.